```
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DIANA ORTIZ ANGLADA,

Plaintiff

v.                                                          CIVIL 96-1875 (JAG)

DR. H. ORTIZ PÉREZ, CLÍNICA
GINECO QUIRÚRGICA, et al.,

Defendant

## MAGISTRATE'S REPORT AND RECOMMENDATION

On July 19, 1996, plaintiff Diana Ortiz Anglada filed her medical malpractice complaint in federal court based on diversity of citizenship jurisdiction.[1] According to plaintiff, at the time she instituted this action, she was a citizen of the state of Pennsylvania, while defendants Dr. H. Ortiz and the Clínica Gineco-Quirúrgica were both citizens of the Commonwealth of Puerto Rico.

On January 3, 2001, the defendants filed a motion to dismiss, challenging plaintiff's entitlement to federal jurisdiction based on (1) plaintiff's status as a minor and (2) the unlikelihood of plaintiff's fulfillment of the amount in controversy requirement. As to the first prong of their challenge, defendants' argument is that the plaintiff—nineteen at the

---

[1]  (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
    (1) citizens of different States[.]

28 U.S.C. § 1332(a).  At the time plaintiff filed her complaint (July 19, 1996), the amount in controversy was $50,000. This statute was amended effective October 19, 1996.




CIVIL 96-1875 (JAG)                                            2

time she filed her complaint—was a non-emancipated minor under the laws of Puerto Rico, with domicile and citizenship of the Commonwealth of Puerto Rico rather than the Commonwealth of Pennsylvania.

## I. Legal Standard

Whether or not an individual is a citizen of a particular state for the purpose of diversity jurisdiction is determined by federal common law, not by any state law. Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d 1027, 1030 (1st Cir. 1988). The burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction and, where—as here— it is properly challenged, the plaintiff also bears the burden of proof. Alicea-Rivera v. SIMED, 12 F. Supp. 2d 243, 245 (D.P.R. 1998); see Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 702 (1st Cir. 1979).

There is diversity of citizenship between the plaintiff and the defendant if these are citizens of different states. Valedón-Martínez v. Hospital Presbiteriano de la Comunidad, Inc., 806 F.2d 1128, 1132 (1st Cir. 1986). In this context, citizenship means domicile within a state, not mere residence. Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991); Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d at 1030. Moreover, because in this context, citizenship is determined as of the date of the initiation of the lawsuit, the only relevant factors are those in existence as of that date. Alicea-Rivera v. SIMED, 12 F. Supp. 2d at 247; see Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991); Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1236 (1st Cir. 1991).

A person's domicile is the place of her "true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d at 1029. An individual's domicile persists until a new one is acquired by the individual's taking up residence in a

CIVIL 96-1875 (JAG)                                    3

different domicile with the intention to remain there. <u>Bank One, Texas, N.A. v. Montle</u>, 964 F.2d 48, 49-50 (1st Cir. 1992); <u>Lundquist v. Precision Valley Aviation, Inc.</u>, 946 F.2d at 10; <u>Hawes v. Club Ecuestre El Comandante</u>, 598 F.2d at 701. The plaintiff must prove by clear and convincing evidence that she has changed her original domicile. <u>Alicea-Rivera v. SUMED</u>, 12 F. Supp. 2d at 245. Neither an amorphous desire nor a mere detached, indefinite and ambulatory intention to relocate from one place to another at an indeterminate future date is of any real significance and neither will suffice to effect a change of domicile. <u>Valentín v. Hospital Bella Vista</u>, 2001 WL 705492, *6 (1st Cir. June 27, 2001).

a) Age of Legal Majority

It is a general principle of common law, recognized also in Puerto Rico under P.R. Laws Ann. tit. 1, § 8 (1967), that the domicile of an unemancipated minor is ordinarily that of her parents. The age of majority in Puerto Rico at the time Ms. Ortiz filed her complaint was 21, P.R. Laws Ann. tit. 31, § 971 (1967). <u>Rodríguez-Díaz v. Sierra-Martínez</u>, 853 F.2d at 1030.

> A minor can be emancipated, and may therefore acquire a different domicile from her parents or guardian, only if the parent exercising *patria potestad* appears before a civil law notary, in the presence of two witnesses, and with the minor's consent, signs an emancipation deed.

P.R. Laws Ann. tit. 31, § 911. See <u>Rodríguez-Díaz v. Sierra-Martínez</u>, 853 F.2d at 1034 (Torruella, J., dissenting). Unless this proceeding takes place before the unemancipated minor's move away from her parents' domicile, it will be legally irrelevant since Puerto Rico domiciled minors lack the independent legal capacity to change their own place of domicile from that of their parents. <u>Id.</u> The determinant factor has therefore been the law of the jurisdiction from which the youth departed, particularly the minor's emancipation status at the time of her departure from her parents' home. <u>Id.</u> at 1035 (citing <u>Spurgeon v. Mission State Bank</u>, 151 F.2d 702, 703 (8th Cir. 1945)).

CIVIL 96-1875 (JAG)                            4

## II. Application

Plaintiff Diana Ortiz Anglada claims that when she filed her complaint in this court on July 19, 1996—20 days after her June 30, 1996 move to Pennsylvania to continue her college education[2]— she was a citizen of Pennsylvania for the purposes of federal diversity jurisdiction. Since out-of-state students often relocate to another state only for the duration of and for the purpose of their studies, they are generally presumed to lack the intention to remain in the state indefinitely. Alicea-Rivera v. SIMED, 12 F. Supp. 2d at 246; Murphy v. Newport Waterfront Landing, Inc., 806 F. Supp. 322, 324 (D.R.I. 1992); see also Rivera v. Hospital Interamericano de Medicina Avanzada, 125 F. Supp. 2d 11, 18 (D.P.R. 2000) (denying federal diversity of jurisdiction to an adult plaintiff who had left Puerto Rico, her domicile state, approximately twelve days prior to filing her complaint). She attempts to rebut this presumption by representing that at the time she filed her complaint she had found employment, had paid taxes, gotten a driver's license, registered to vote, signed a rent contract for an apartment unit, and opened a bank account in the state of Pennsylvania. The information on the record, however, points otherwise.

As of July 19, 1996, Ms. Ortiz—an otherwise unemancipated, nineteen year old minor, domiciliary of Puerto Rico—had in fact never been employed in the state of Pennsylvania, and her main occupation was actually that of college student.[3] Plaintiff herself admitted during her August 5, 1997 deposition that at the time of filing and throughout the fall of 1996, her mother paid her monthly rent and utilities, as well as her

---

[2] See Docket No. 37, Defendants' Motion to Dismiss, Exhibit A, Plaintiff's Deposition at 13, l. 25.

[3] See Docket No. 37, Defendants' Motion to Dismiss, Exhibit A, Plaintiff's Deposition at 6, l. 25.

CIVIL 96-1875 (JAG)                              5

personal expenses.[4] Actually, Ms. Ortiz did not become employed at all until sometime in the spring of 1997, when she allegedly started to work for her school's alumni fund, asking for donations over the phone and earning five dollars an hour.[5] Rather than being indicative of plaintiff's post-graduation commitments, Ms. Ortiz' part-time employment reflects a student's desire to earn money to help fund the expenses of her education. See Alicea-Rivera v. SIMED, 12 F. Supp. 2d at 247 (citing to Hakkila v. Consolidated Edison Co. of New York, 745 F. Supp. 988, 990 (S.D.N.Y. 1990)). Plaintiff admits that at this point her mother was responsible for the payment of her monthly rent and utilities.

As of the date she filed her complaint, plaintiff had never paid taxes in Pennsylvania, though, she alleges that she filed her state taxes there within a month or two after her arrival, sometime in July or August of 1996.[6] She similarly represents that she had gotten her permanent Pennsylvania driver's license sometime in July, 1996.[7] Most surprisingly, Ms. Ortiz—who claims to be a registered voter in that state— contends that she exercised her right to vote in the presidential elections of the state of Pennsylvania sometime between January and May of 1997, in spite of the fact that those elections were celebrated in November, 1996.[8] Though the state where a person registers to vote is a "weighty" factor in determining domicile, absent any evidence of post-graduation commitments in the

---

[4]See Docket No. 37, Defendants' Motion to Dismiss, Exhibit A, Plaintiff's Deposition at 14, ll. 12-13.

[5]See Docket 37, Defendants' Motion to Dismiss, Exhibit A, Plaintiff's Deposition at 7, ll. 16, 25; at 9, l. 1.

[6]See Docket No. 37, Defendants' Motion to Dismiss, Exhibit A, Plaintiff's Deposition at 26, l. 1.

[7]Ms. Ortiz, however, does not own a car, has no car registered under her name, and has not actually ever driven in Pennsylvania. See Docket No. 37, Defendants' Motion to Dismiss, Exhibit A, Plaintiff's Deposition.

[8]See Docket No. 37, Defendants' Motion to Dismiss, Exhibit A, Plaintiff's Deposition at 24, l. 5, ll. 12-14.

CIVIL 96-1875 (JAG)                                6

state, a college student's act of registering to vote has been deemed insufficient. Hakkila v. Consolidated Edison Co. of New York, 745 F. Supp. 2d at 990; Alexander v. Trustees of Boston Univ., 584 F. Supp. 282, 287 (D. Mass. 1984), rev'd on other grounds, 766 F.2d 630 (1st Cir. 1985); Lyons v. Salve Regina College, 422 F. Supp. 1354, 1357 (D.R.I. 1976), rev'd on other grounds, 565 F.2d 200 (1st Cir. 1977), cert. denied, 435 U.S. 971 (1978).

Therefore, although Ms. Ortiz purports that twenty days after her arrival in Pennsylvania she had already centered her business, domestic, social, and civic life therein and had thus become a domiciliary of that state for purposes of diversity jurisdiction, I disagree. Although her statement of intent is relevant to the determination of domicile, where—as here—a litigant's alleged intent so clearly conflicts with the objective facts underlying her claim, it is entitled to minimal weight. Rivera v. Hospital Interamericano de Medicina Avanzada, 125 F. Supp. 2d at 18; Alicea-Rivera v. SIMED, 12 F. Supp. 2d at 246 (citing to Freemen v. Northwest Acceptance Corp., 754 F.2d 553, 558 (5th Cir. 1985); Hendry v. Masonite Corp., 455 F.2d 955, 956 (5th Cir.), cert. denied, 409 U.S. 1023 (1972).

This disagreement finds additional support in Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir.), cert. denied, 419 U.S. 842 (1974). In Mas v. Perry, cited by plaintiff, the Court determined that, notwithstanding that Mrs. Mas—one of the plaintiffs involved in the case— had lived in Louisiana for about three years and nine months, she was still considered a citizen of Mississippi for diversity purposes. See Mas v. Perry, 489 F.2d at 1398, 1400. Like Ms. Ortiz', Mrs. Mas' move was prompted by her decision to continue her college education, as well as by her desire to remain close to family members—namely, her husband. Like Ms. Ortiz, she had entered into a rental contract for a housing unit and had been employed by the college institution she attended.

CIVIL 96-1875 (JAG)                                               7

I find that on July 19, 1996, Ms. Ortiz was a domiciliary of the Commonwealth of Puerto Rico for the purposes of diversity jurisdiction. This court therefore lacks both subject matter jurisdiction over plaintiff's medical malpractice claim. I therefore recommend that defendant's motion to dismiss be granted and that the case be dismissed.

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 23rd day of July, 2001.

JUSTO ARENAS
United States Magistrate Judge